No. 33,753

Annie Dougherty, *Appellant,* v̂. M. A. Norlin, *Appellee.*

(78 P. 2d 65)

Opinion filed April 9, 1938.

W. N. Banks, O. L. O'Brien and *Walter L. McVey,* all of Independence; *J. S. Simmons, Alva L. Fenn* and *Herbert E. Ramsey,* all of Hutchinson, for the appellant.

*Erskine Wyman* and *Max Wyman,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

Wedell, J.: This was an action to recover the proceeds from the sale of a lost or misplaced United States government bond. Defendant's demurrer to the petition was sustained on the ground the action was barred by the statute of limitations. From that ruling plaintiff appeals.

The material facts contained in the petition were in substance as follows: Plaintiff resided at Independence. She was and is the owner of coupon bond No. 67,296F for $1,000 of the treasury 3-3/8's (1940-1943) bonds, which bond in some way unknown to her became misplaced or lost. Plaintiff made diligent search for the bond but was unable to locate it until finally, through the aid of the treasury department at Washington, D. C., she first discovered on or about June 17, 1936, that the defendant, M. A. Norlin, had the bond in his possession, and that defendant *failing to locate the owner thereof,* had sold and delivered the bond to Harris, Upham & Co., brokers of Kansas City, Mo., on or about May 29, 1933, and had received the proceeds thereof. The first notice plaintiff obtained

that defendant had the bond was by letter from the treasury department dated June 17, 1936, copy of which letter is attached to the petition and made a part thereof.

The material portion of the letter from the treasury department was as follows:

"As you were previously informed, bond No. 67,296F was received in the department in regular course of business on June 3, 1933. In order to furnish you all the information available in regard to the transactions in connection with this bond, this office, with the aid of the various agencies through which the bond passed, traced the source of its receipt, and found that it was purchased by Harris, Upham & Company, Kansas City, Mo., on May 29, 1933, from Mr. M. A. Norlin, who formerly lived in Independence, Kan., but who now resides in Hutchinson, Kan. In reply to a letter addressed to Mr. Norlin inquiring how the bond came into his possession, this office has been informed that he found a government bond in his safe deposit box in the First National Bank in Independence some time in March, 1933, and that he was unable to determine how the bond first appeared in the box. Mr. Norlin further states that *after an unsuccessful effort to locate the owner,* he finally sold the bond, he presumes in May, 1933. Copies of Mr. Norlin's letters of January 29 and April 14, 1936, are enclosed for your information." (Italics inserted.)

After plaintiff learned defendant, M. A. Norlin, had sold and cashed the bond and that defendant had the proceeds thereof, plaintiff immediately made demand both orally and in writing upon defendant for the proceeds of the bond, and made demand upon defendant to account to her for the proceeds, but that defendant failed, neglected and refused to account for the proceeds thereof. That there is due to plaintiff from defendant the sum of $1,016, with interest thereon from June 1, 1933, at the rate of six (6%) percent per annum, from the proceeds of the bond.

Was the action barred? It will be observed the action was not for the recovery of the bond, but was brought for the purpose of recovering the proceeds resulting from the conversion thereof. When appellee found the bond in his deposit box he did not acquire title thereto nor the right to possession thereof as against plaintiff, the true owner. (25 C. J., Finding Lost Goods, § 3.) He sold the bond and converted the proceeds thereof to his own use. In 65 C. J. 11, "conversion" is defined as follows:

"Conversion is 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" (See, also, *Taylor v. Missouri Central Type Foundry Co.,* 143 Kan. 175, 180, 53 P. 2d 815.)

The bond had been redeemed by the government and could, of course, not be recovered. Plaintiff's petition clearly discloses she

waived the tort and based her action for the recovery of the proceeds, resulting from the sale or conversion of the bond, on the theory of implied contract. In other words, the action was in the nature of an action for money had and received to his use. In 25 C. J., Finding Lost Goods, § 16, it is said:

"The true owner may enforce his rights against the finder by trover, or replevin, or, if it was money that was lost, the owner may bring an action against the finder for money had and received."

In 1 C. J., Actions, § 159, it is declared:

"The rule is well settled that, where personal property has been wrongfully taken and converted into money or money's worth, the owner may waive the tort and sue the wrongdoer in contract for money had and received, upon the theory that he ratifies the sale as made for his benefit, and sues to recover the proceeds as money had and received to his use."

See, also, *Smith v. McCarthy*, 39 Kan. 308, 18 Pac. 204; *Lipscomb v. Bank*, 66 Kan. 243, 71 Pac. 583; *Altman v. Bank*, 86 Kan. 930, 122 Pac. 874.

In the Lipscomb case it was held:

"The owner of property which has been *stolen or embezzled* may waive the tort and sue on the implied contract, and in such action he may have an attachment against the nonresident defendant." (Italics inserted.)

In 1 C. J., Actions, § 169, the rule as to limitations of actions is stated thus:

"Where one waives a tort and sues in contract he necessarily waives the entire tort, . . . Where a tort is waived and an action brought in contract, the case is governed by the rules and principles applicable to the latter form of action, as in regard to . . . *the statute of limitations applicable,* . . ." (Italics inserted.)

See, also, Restatement, Restitution, §§ 121, 128, and introductory note to chapter 7. In the introductory note it is indicated the election to bring the action of assumpsit is not a waiver of the tort, but is the choice of one of two alternative remedies. Whether the action be construed to constitute a waiver of the tort or only a choice of remedies, the remedy chosen was barred within three years. (G. S. 1935, 60-306.)

The appellee found the bond in February or March of 1933. He converted it by selling it to a bond broker on May 29, 1933. The present action was not commenced until December 8, 1936. Clearly the action was commenced not only more than three years after the bond was found, but also more than three years after the date of its conversion.

Appellant insists appellee having found the bond, he was under no obligation to deliver it until a demand was made for its surrender and hence no cause of action accrued until a demand was made. She therefore urges the statute of limitations did not begin to run until the date of the demand. In support of the contention various cases are cited involving the law of principal and agent and other fiduciary relationships. They are not controlling in the instant case. In them the agent was under a legal duty to account to his principal, and his concealment of the true facts constituted actual fraud or amounted to conduct in the nature of a fraud upon his principal. True, in cases of fraud, the statute of limitations does not begin to run until the discovery of the fraud. The statute so provides. (G. S. 1935, 60-306, *third*.) This action was not grounded on fraud. The petition alleged that appellee, *"failing to locate the owner thereof,* had sold and delivered the bond." The letter from the treasury department, attached to the petition, sets forth appellee's conduct as follows: "Mr. Norlin further states that *after an unsuccessful effort to locate the owner,* he finally sold the bond." (Italics inserted.) These are not allegations of fraud, but on the contrary constitute an admission of appellee's failure to locate the owner after an effort to do so. Moreover, it can hardly be said that the sale of a government bond to a bond broker, after such failure to locate the owner, constituted concealment. The government redeemed the bond on June 3, 1933, which was more than three years and six months before this action was begun.

Plaintiff further urges the statute of limitations could not begin to run until she discovered who had found the bond. The statute makes no exception as to "discovery," except in cases of fraud. We are not permitted to read other exceptions into it, and the fact a party does not know he has a cause of action does not prevent the running of the statute of limitations. (*Regier v. Amerada Petroleum Corp.,* 139 Kan. 177, 183, 30 P. 2d 136.)

Appellant suggests appellee's conduct constituted constructive fraud. The petition does not appear to have been drawn on such a theory. The finding of the bond was in no wise wrongful. The sale of it, after failure to locate the owner, constituted neither actual nor constructive fraud, but conversion. The averments of the petition disclose the conversion, the tort, was waived and that recovery was sought on the theory of an implied contract to pay its value. When plaintiff sued on implied contract she waived the entire tort. The

nature of the cause of action must be determined from the pleadings. (*Smith v. McCarthy,* 39 Kan. 308, 18 Pac. 204; *Webb v. Crawford County Comm'rs,* 127 Kan. 547, 274 Pac. 249.) In the latter case it was said:

"The nature of a cause of action, whether based on tort or on quasi contract, is to be determined from the allegations of the petition. When doubt exists words appropriate to an action for tort will be disregarded, and the petition will be interpreted as counting on quasi contract. (*Smith v. McCarthy,* 39 Kan. 308, 18 Pac. 204; *Delaney v. Implement Co.,* 79 Kan. 126, 98 Pac. 781; *Douglass v. Loftus, Adm'x,* 85 Kan. 720, 727, 110 Pac. 74.)" (p. 549.)

Appellant cites the early case of *Daniel v. McLucas,* 8 Kan. App. 299, to the effect that discovery of lost or stolen property and a demand on an innocent holder for possession are necessary to start the running of the statute. That was an action for the recovery of the lost or stolen property. It was not an action in which the tort was waived and recovery of the proceeds of the sale was sought on the theory of an implied contract. It is also well to note the opinion took no notice whatsoever of the fact that in an action for the recovery of property taken or detained, the statute made no exception to the effect that the cause of action did not accrue until the discovery of its location. (G. S. 1935, 60-306, *Third.*) Under the allegations of the petition appellant's ignorance of the location of the bond was not due to conduct of the appellee. No fraud or even concealment of the location of the bond having been pleaded in the instant case, the cause of action accrued upon the date of the conversion of the bond and not from the date of the discovery of its location by the owner. (*Bennett v. Meeker,* 61 Mont. 307, 202 Pac. 203; *Adams et al. v. Coon et al.,* 36 Okla. 644, 129 Pac. 851; *Shelby v. Shaner,* 28 Okla. 605, 115 Pac. 785; *McGehee v. Alexander,* 33 Okla. 699, 127 Pac. 480; *Torrey v. Campbell,* 73 Okla. 201, 175 Pac. 524.)

In the Bennett case it was said:

"The application of this subdivision of the law may appear rigid and unfair, and it finds its way into the statutes doubtless upon the theory that under the law of averages it gives the greatest good to the greatest number in tolling the rights of negligent claimants. The remedy for curing its apparent defects with respect to diligent and honest owners rests with the legislature and not with this court." (p. 311.)

We have carefully noted all the authorities cited by appellant, but they do not quite reach the point in issue. This court is no more in sympathy with the retention by appellee of the proceeds from the

sale of the bond than is the appellant, but in view of what has been said it is clear we cannot reverse the ruling of the trial court. The order sustaining the demurrer to the petition must be affirmed. It is so ordered.