CHRISTENSEN GRAIN, INC., *Appellant,* v. THE GARDEN CITY
COOPERATIVE, EQUITY EXCHANGE, *Appellee.*

No. 43,586

CHRISTENSEN GRAIN, INC., *Appellant,* v. BROOKOVER FEED YARDS,
INC., *Appellee.*

No. 43,587

CHRISTENSEN GRAIN, INC., *Appellant,* v. SEABOARD ALLIED MILLING
CORPORATION, *Appellee.*

(391 P. 2d 81)

Opinion filed
April 11, 1964.

*Dale E. Saffels,* of Garden City, argued the cause, and *Lloyd H. Haag,* of
Garden City, was with him on the briefs for the appellant.

*Chas. Vance,* of Liberal, argued the cause, and *H. Hobble, Jr., Chester A.
Nordling,* and *Gene H. Sharp,* all of Liberal, were with him on the briefs for
appellee, Brookover Feed Yards, Inc.

*Harold Irwin, S. J. Glaves, Orval L. Fisher,* and *Clarence N. Holeman,* all of
Wichita, were on the briefs for the appellee, Garden City Cooperative Equity
Exchange.

*Frank S. Hodge* and *H. Newlin Reynolds,* both of Hutchinson, were on the
briefs for appellee, Seaboard Allied Milling Corporation.

The opinion of the court was delivered by

PARKER, C. J.: These appeals present the question as to when
the statute of limitations commences to run against the owner of
stolen grain who seeks recovery against an innocent purchaser.

Three separate cases were filed in the district court of Finney
County by the same plaintiff against three separate defendants with
petitions presenting substantially the same facts. The district court

made the same ruling in each of the cases with respect to pleadings. Plaintiff filed three separate appeals from such rulings and three separate abstracts with this court. Thereupon counsel for the respective parties filed a joint motion requesting that the cases be consolidated for appellate review and, upon the granting of such motion, stipulated that the decision in Case No. 43,585 would control the decisions in Cases Nos. 43,586 and 43,587. Therefore we proceed in this opinion on that premise.

The controlling facts are disclosed by the amended petition, allegations of which will be highly summarized.

The plaintiff, Christensen Grain, Inc., owns and operates a public warehouse for the storage, purchase and sale of grain. During 1959, 1960, and the first part of 1961, a trusted employee stole grain from plaintiff's public warehouse on numerous occasions. This grain, through the help of a farmer in the community, was sold by the employee and the farmer to grain elevators and feed yards in the vicinity, including the defendant, The Garden City Cooperative Equity Exchange. Plaintiff did not know that the grain was stolen or that part of it was sold to the defendant until May 2, 1961. The amended petition further alleges that written demand was made for the value of the grain on October 19, 1961, and prays for judgment for the value of the grain sold to the defendant plus interest. No claim is made in the amended petition that the defendant knew, or had reason to believe, the grain purchased by it was stolen grain or that fraud was involved in acquiring it.

With the amended petition in form, as heretofore indicated, defendant demurred thereto on the ground that pleading failed to state a cause of action. After a hearing the district court announced its ruling on the demurrer which, according to the journal entry of record, reads:

". . . The court, having heard the arguments of counsel, doth sustain said demurrer as to all of the various conversions therein alleged which occurred more than two years prior to the filing of this suit and doth overrule said demurrer as to all of said alleged conversions which occurred less than two years prior to the filing of this suit."

Thereupon plaintiff perfected the instant appeal.

At the outset it may be stated that counsel for the respective parties, with commendable candor, have impliedly, if not expressly, conceded certain matters, both in their briefs and on oral argument,

which materially simplify a proper understanding of the all-decisive issue here involved. These matters may be stated thus:

1. That the instant action is founded in tort, not on implied contract, and that the two-year statute of limitations (G. S. 1949, 60-306, *Third.*) applies.

2. That the appellee did not know, or had no reason to believe, that the grain in question was stolen an was in fact an innocent purchaser for value of such grain.

3. That, although the record is somewhat indefinite, the action was commenced in the district court during the latter part of October, 1961. With specific reference to this particular point it may be said our review of the record leads to the conclusion it was commenced on October 31, 1961.

Notwithstanding what has just been stated specific dates are not important. The parties present a single question for determination, *i. e.,* when does the statute of limitations begin to run in an action to recover the value of stolen property from an innocent purchaser?

The appellant contends that the statute does not commence to run until the owner of the stolen property discovers the innocent purchaser to whom the stolen property was sold.

On the other hand the appellee contends that the statute commenced to run against the appellee at the time it committed the tort, *i. e.,* made the innocent purchase of the stolen grain.

After careful consideration of all arguments advanced by the parties in support of their respective positions we are constrained to agree with appellee's contention.

The applicable provision of the statute of limitations is to be found in G. S. 1949, 60-306, *Third.* It provides:

"Within two years: An action for trespass upon real property; *an action for taking,* detaining or injuring personal property, including actions for the specific recovery of *personal property;* an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated; an action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud." (Emphasis supplied.)

An action for the taking of personal property (conversion) must be brought within two years from the time of the conversion. See *Smith v. Bridgeport Machine Co.,* 151 Kan. 444, 446, 100 P. 2d 65; *Preston v. Shields,* 159 Kan. 575, 156 P. 2d 543.

The third subdivision of G. S. 1949, 60-306, contains but one ex-

ception, *i. e.*, a cause of action for fraud shall not be deemed to have accrued until the fraud is discovered.

This court has held on numerous occasions that where the legislature has made a specific exception to a statute of limitations any exceptions not mentioned are excluded by implication.

In *Railway Co. v. Grain Co.*, 68 Kan. 585, 75 Pac. 1051, we held: "The enumeration by the legislature of specific exceptions to a statute of limitations by implication excludes all others." (Syl. ¶ 1.)

The above case was approved in *Regier v. Amerada Petroleum Corp.*, 139 Kan. 177, 30 P. 2d 136, which reads:

"It is said that there is a radical difference of judicial opinion upon the subject, but the court determined that the rule adopted should be the one enforced in Kansas. In *Baxter v. Krause*, 79 Kan. 851, 101 Pac. 467, *Railway Co. v. Grain Co.* is cited with approval on the theory that the courts will not ingraft a new exception upon a statute of limitations, exceptions by implication being not favored. The case is cited again in *Casper v. Lewin*, 82 Kan. 604, 109 Pac. 657, wherein the case is referred to as follows:

" 'It is the law in this state that when the language of a statute is plain and unambiguous there is no room left for a judicial interpretation which will change the effect of the language employed. (*Ayers v. Comm'rs of Trego Co.*, 37 Kan. 240.) This principle has been applied in some striking instances. Thus, in *Railway Co. v. Grain Co.*, 68 Kan. 585, the court refused to read into the statute of limitations an exception to meet the fraudulent concealment of a breach of contract.' (p. 627.)

"In *Rucker v. Hagar et al.*, 117 Kan. 76, 230 Pac. 70, the court said:

" 'Warranty sounds in contract, fraud sounds in tort, and liability predicated on breach of warranty is contract and not tort liability. The assertion that plaintiffs could sue on the contract of warranty within two years after discovery of the fraud must mean that they could sue on the contract of warranty within two years after discovery of the breach of warranty, and consequently does not state the law. The subject received careful consideration in the case of *Railway Co. v. Grain Co.*, 68 Kan. 585, 75 Pac. 1051.' (p. 79.)

"Later cases cited and approving the rule of *Railway Co. v. Grain Co.*, supra, are *Blitz v. Metzger*, 119 Kan. 760, 241 Pac. 259; *Emanuel Home v. Bergin*, 127 Kan. 593, 274 Pac. 284; *City of Coffeyville v. Metcalf*, 134 Kan. 361, 5 P. 2d 807." (pp. 182, 183.)

The same question was again discussed in *Dougherty v. Norlin*, 147 Kan. 565, 78 P. 2d 65. In that case a bond had been found and sold to an innocent third party. The owner sought to recover from the purchaser. There we said:

"Plaintiff further urges the statute of limitations could not begin to run until she discovered who had found the bond. The statute makes no exception as to 'discovery,' except in cases of fraud. We are not permitted to read

other exceptions into it, and the fact a party does not know he has a cause of action does not prevent the running of the statute of limitations. (*Regier v. Amerada Petroleum Corp.*, 139 Kan. 177, 183, 30 P. 2d 136.)"

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Appellant cites the early case of *Daniel v. McLucas*, 8 Kan. App., 299, to the effect that discovery of lost or stolen property and a demand on an innocent holder for possession are necessary to start the running of the statute. That was an action for the recovery of the lost or stolen property. It was not an action in which the tort was waived and recovery of the proceeds of the sale was sought on the theory of an implied contract. It is also well to note the opinion took no notice whatsoever of the fact that in an action for the recovery of property taken or detained, the statute made no exception to the effect that the cause of action did not accrue until the discovery of its location. (G. S. 1935, 60-306, *Third.*) Under the allegations of the petition appellant's ignorance of the location of the bond was not due to conduct of the appellee. No fraud or even concealment of the location of the bond having been pleaded in the instant case, the cause of action accrued upon the date of the conversion of the bond and not from the date of the discovery of its location by the owner. (Citing cases.)" (pp. 568, 569.)

In the case at bar the appellant's cause of action against the appellee accrued when appellee innocently purchased the appellant's grain from the thief causing the conversion.

The statute provides that an action for taking personal property, a tort action for conversion, shall be commenced within two years. There are no exceptions. There would be no justification for this court adding the exception suggested by appellant to the effect that the statute of limitations does not commence to run until the owner of stolen property discovers the innocent purchaser to whom the stolen property was sold.

See *Graham v. Updegraph*, 144 Kan. 45, 58 P. 2d 475, where it is said:

".   .   . However, we still adhered to the rule announced in *Becker v. Porter*, supra, that the statute of limitations in an action for tort begins to run from the date of the tort and not from the date of he discovery of it. (See *Railway Co. v. Dale*, 68 Kan. 108, 74 Pac. 596.)"

For other Kansas decisions which throw some light on the question see *Manka v. Martin Metal Mfg. Co.*, 153 Kan. 811, 113 P. 2d 1041; *Meade v. Brosius*, 158 Kan. 418, 147 P. 2d 716; and *McCoy v. Wesley Hospital & Nurse Training School*, 188 Kan. 325, 362 P. 2d 841.

Appellant relies almost entirely on *Daniel v. McLucas*, 8 Kan. App. 299, 55 Pac. 680, where it is held:

"Where personal property is sold to an innocent purchaser by one who has no rightful ownership or possession thereof, and said purchaser takes and retains open, notorious and exclusive possession thereof for more than two years before the owner learns of its whereabouts, *held*, that the owner is not barred by the statute of limitations from recovering said property." (Syl.)

We are convinced the Daniel case does not properly state the law as pronounced by this court. The decision has been overruled by implication on many occasions. (See the cases heretofore cited in this opinion.)

Appellant suggests that the statute of limitations does not commence to run until demand is made on the purchaser of the stolen property. In its brief, without pursuing the subject further, it states:

"The appellant further contends that the Daniel case, supra, is authority for the proposition that a demand is necessary to start the running of the statute of limitations as against the rightful owners of property lost or stolen in the hands of an innocent purchaser."

It is neither necessary nor required that we labor the foregoing contention. It suffices to say that the short and simple answer thereto is to be found in what has been said and held earlier in this opinion. To assume that, under the existing facts and circumstances, a demand was necessary as a prerequisite to the bringing of the present action does not create an exception to, nor does it avoid the force and effect of, the clear and unequivocal provisions of 60-306, *Third,* supra.

It must be conceded, as appellant insists, that the Daniel case appears to support its contentions. Even so, that case on the above point, and others previously discussed, does not state the law as pronounced by this court in repeated and more recent decisions. Therefore *Daniel v. McLucas,* 8 Kan. App. 299, 55 Pac. 680, should be and is overruled in its entirety.

What has been heretofore stated and held compels a conclusion the trial court did not err in sustaining the demurrer to the amended petition. This means that the orders and judgments from which appeals were perfected in Cases Nos. 43,585, 43,586 and 43,587 must be and are affirmed—and it is so ordered.